**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**BANK OF AMERICA CORPORATION, as successor to FLEETBOSTON FINANCIAL CORPORATION,**

**Plaintiff,**

**v.**

**CHUBB CORPORATION, FEDERAL INSURANCE CO., CHUBB & SON, INC., and BULFINCH INDEMNITY COMPANY, LTD., as successor to FFG INSURANCE CO., LTD.,**

**Defendants.**

[redacted] 05 361 ML

**Case No. __________**

**Jury Trial Demanded**

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff Bank of America Corporation, as successor to FleetBoston Financial Corporation, brings this action against defendants Chubb Corporation, Federal Insurance Co., its division Chubb & Son, Inc., and Bulfinch Indemnity Company, Ltd., formerly known as FFG Insurance Company. Ltd., seeking breach of contract, declaratory judgment, and other relief arising from Defendants' wrongful refusal to comply with their obligations to indemnify Plaintiff for its defense and settlement costs in connection with a series of large and complex securities class and individual actions originally brought against, <u>inter</u> <u>alia</u>, Fleet

Securities, Inc. and Robertson Stephens International Ltd., subsidiaries of FleetBoston Financial Corporation. Plaintiff seeks money damages against the various Defendants for breach of contract, bad faith claims handling, negligence, and intentional interference with Plaintiff's contract for insurance.

## PRELIMINARY STATEMENT

This insurance coverage action arises from Defendants' refusal to honor promises in an insurance policy to pay Plaintiff for its defense costs and losses arising from the defense and settlement of a series of securities class and individual actions, the consolidation of which was styled In Re WorldCom, Inc. Securities Litigation (Case No. 02 CV 3288 (DLC) S.D.N.Y. (filed Oct. 11, 2002)) ("WorldCom Litigation"). Although Defendant FFG insured and issued the policy covering Fleet, Defendant Chubb & Son, Inc. and its affiliates had the right and the duty under a claim administration agreement with FFG to investigate and assess, in good faith, claims for coverage under the policy and to make "all decisions with respect to the ultimate disposition of a Claim." It is, therefore, the tortious and otherwise wrongful acts of Chubb in repudiating coverage which has forced Plaintiff to file the instant action.

The WorldCom Litigation raised claims squarely within the insuring agreement of the insurance policy covering Fleet, and no exclusion in the policy bars or limits coverage. Indeed, Chubb acknowledged that Fleet's claim for

coverage falls within the policy's insuring agreement, yet Chubb repeatedly and unjustifiably continued to assert that the policy did not cover Fleet's losses. Plaintiff seeks in this action to be made whole for its covered losses, and also seeks other relief to deter Chubb from such wrongful conduct in the future.

## PARTIES

1. Plaintiff Bank of America Corporation ("Bank of America") is a corporation organized under the laws of the State of Delaware with its principal place of business in North Carolina. Bank of America is the successor-in-interest to FleetBoston Financial Corporation ("Fleet") by virtue of a merger whereby Fleet was merged into Bank of America. At all times relevant to this action, Fleet, a bank holding company, was a Rhode Island corporation with its principal place of business in Rhode Island.

2. At the time of the merger, Fleet Securities, Inc. and Robertson Stephens International Ltd. were wholly-owned subsidiaries of Fleet. Unless otherwise noted, for the purposes of this Complaint, Fleet, Fleet Securities, Inc., and Robertson Stephens International Ltd. are referred to collectively as "Fleet."

3. The Chubb Corporation is now and was at all times relevant to this action a corporation organized under the laws of the State of New Jersey with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Chubb Corporation is now and was at all times relevant to

this action licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

4. Defendant Federal Insurance Company ("Federal") is now and was at all times relevant to this action a corporation organized under the laws of the State of Indiana with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Federal is a wholly-owned subsidiary of The Chubb Corporation. Upon information and belief, Federal is now and was at all times relevant to this action licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

5. Defendant Chubb & Son, Inc. is now and was at all times relevant to this action a corporation organized under the laws of the State of New York with its principal place of business at 15 Mountain View Road, Warren, New Jersey. Upon information and belief, Chubb & Son, Inc. is a division of Federal. Upon information and belief, Chubb & Son, Inc. is now and was at all times relevant to this action licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance. For the purposes of this Complaint, The Chubb Corporation, Federal Insurance, and Chubb & Son, Inc. are referred to collectively as "Chubb."

6. Upon information and belief, defendant Bulfinch Indemnity Co., Ltd. ("Bulfinch") is the successor-in-interest to FFG Insurance Co. Ltd. Upon information and belief, Bulfinch is a company organized under the laws of the State of Vermont with a principal place of business in Burlington, Vermont. Upon information and belief, Bulfinch is now and was at all times relevant to this action licensed or authorized by various states, including Rhode Island, to sell insurance policies or otherwise conduct the business of insurance.

7. FFG issued a primary insurance policy to Fleet which provides insurance coverage to, among other persons, Fleet and its subsidiaries. The primary insurance policy was delivered to Fleet at its headquarters in Providence, Rhode Island.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and all Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs. Personal jurisdiction over Defendants exists because each has transacted business in Rhode Island and has contracted to insure or act as a surety for or on behalf of persons, property, or risk located in the State of Rhode Island, or otherwise engaged in the business of insurance in Rhode Island.

9. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because (a) Defendants reside in this District, by virtue of being subject to the personal jurisdiction of this Court as set forth herein, (b) the insurance policy upon which this action is based was delivered to Fleet in Rhode Island; and (c) a substantial part if not all of the events or omissions giving rise to Plaintiff's claims and damages occurred in this District.

## FACTUAL ALLEGATIONS

10. Plaintiff incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 - 9 above.

### The Primary Insurance Policy Covering Fleet

11. Fleet and FFG are parties to a primary insurance policy described as a "Combined Risk Protection Program," bearing Policy Number FFG 00004 (the "Insurance Policy"), whereby, for good and valuable consideration, FFG agreed to insure Fleet against certain losses that it incurred, including losses sustained by its subsidiaries. True and correct copies of the Insurance Policy Declarations and General Conditions Section 1 are attached hereto as Exhibits A and B, respectively.

12. After negotiation between FFG and Fleet's Risk Management office in Rhode Island, FFG delivered the Insurance Policy to Fleet in Rhode Island.

13. Pursuant to the Insurance Policy, Fleet and its subsidiaries are entitled to various types of insurance coverage, including coverage under Section 4, which is entitled "Bankers Professional Liability." Bank of America Corporation is the successor-in-interest to Fleet with respect to all rights under the Insurance Policy. A true and correct copy of the Bankers Professional Liability coverage section is attached as Exhibit C.

14. The Insurance Policy covers claims made against Fleet from October 1, 1999 to January 1, 2003. By agreement of Fleet and FFG and in accordance with the terms of the Insurance Policy, and for good and valuable consideration, the coverage was extended to cover the period up to and including January 1, 2004.

15. The Insurance Policy has an aggregate limit of liability of $100 million, subject to a retention. FFG obtained reinsurance for a portion of the aggregate limit under the Insurance Policy, including a quota share of 30 percent of the $100 million reinsurance limit of liability from Chubb through Defendant Federal.

16. Fleet has paid all premiums for the Insurance Policy issued by FFG, including a separate premium for the "extended reporting period," which extended the policy period to January 1, 2004. Premiums were paid by Fleet from its headquarters in Providence, Rhode Island. Fleet and its successor, Plaintiff, have in all other respects complied with the terms of the Insurance Policy.

17. The Bankers Professional Liability coverage section contains the following broad insuring agreement:

> The **Insurer** will pay on behalf of the **Insureds** for all **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period**, or, if exercised, the **Extending Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds**, or any other person for whose actions the **Insured** is legally responsible, while performing **Professional Services** including failure to perform **Professional Services.**

(Bankers Professional Liability coverage section, Exhibit C, at 1).

18. The Bankers Professional Liability coverage section also contains the following applicable definitions:

> **Loss** means the total amount which any **Insured** becomes legally obligated to pay on account of each **Claim** . . . made against the **Insureds** for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs** . . . .
>
> **Defense Costs** shall mean that part of **Loss** consisting of reasonable costs, charges, fees, (including but not limited to attorneys' fees and experts' fees) and expenses . . . incurred in defending or investigating **Claims** . . . .
>
> **Wrongful Act** means:
>
> (a) any actual or alleged statement, misstatement, error, omission or negligent act in rendering or failing to render **Professional Services** or in conducting **Lending Activity.**
>
> . . .

(Bankers Professional Liability coverage section, Exhibit C, at 1-2).

**Chubb and FFG's Claim Administration Agreement**

19. Chubb and FFG are parties to a Claim Administration Agreement, effective October 1, 1999, pursuant to which Chubb, among other things, agreed and was contractually bound (a) to receive, review and evaluate claims for coverage tendered by Fleet and other insureds under the Insurance Policy and, ultimately, (b) to assess such claims for coverage in good faith under the Insurance Policy, and based upon such good faith analysis, determine whether such claims made by Fleet and other insureds under the Insurance Policy were covered, partially covered, or not covered. A true and correct copy of the Claim Administration Agreement is attached hereto as Exhibit D.

20. Chubb was paid substantial fees for the services under the Claim Administration Agreement, and was also paid substantial reinsurance premiums.

21. Pursuant to the Claim Administration Agreement, Chubb was given authority to interpret and apply policy language to claims for coverage and "make **Policy** coverage decisions, and to settle covered **Claims** for any amount up to the **Policy** limits." Exhibit D, Claim Administration Agreement, at § 2.C. "All decisions with respect to the ultimate disposition of a **Claim** under the **Policy's** limits shall be made by **Chubb**." Id. at § 2.E.

22. The sole purpose of the Claim Administration Agreement was to contract to Chubb all of the claim administration duties that FFG was legally

obligated to provide to Fleet in connection with any claim made under the Insurance Policy by Fleet or others insured under the Insurance Policy. Chubb and FFG intended to confer and did confer upon Fleet the benefits of the claim administration services that FFG and Chubb were obligated to provide under the Insurance Policy and the Claim Administration Agreement. Fleet, as well as any insured under the Insurance Policy, were at all relevant times intended third-party beneficiaries of the Claim Administration Agreement between Chubb and FFG.

23. Chubb owed to Fleet, as a third-party beneficiary, the duty of complying in good faith with all terms of the claim administration obligations of FFG under the Insurance Policy. Chubb further owed to Fleet a duty of good faith and fair dealing in performing its contractual duties under the Claim Administration Agreement, and Chubb was thus obligated to administer and evaluate any claims by Fleet fairly and in good faith and to interpret such claims fairly and in good faith under the terms of the Insurance Policy.

24. In the Claim Administration Agreement, Chubb expressly represented and promised, for the benefit of Fleet, that Chubb "will comply with all applicable laws and regulations, including but not limited to those relating to claim settlement practices." Exhibit D, at § 3. Fleet, and the other entities entitled to coverage under the Insurance Policy, were the intended beneficiaries of Chubb's promises and representations.

25. Chubb was aware at the time it made these promises and accepted these obligations that Fleet was resident in Rhode Island and that the Insurance Policy was delivered to Fleet in Rhode Island. Chubb thus agreed to comply with all of Rhode Island's laws and regulations, including those related to claim settlement practices, in its dealings with Fleet and FFG under the Insurance Policy.

26. At all relevant times, Chubb handled and otherwise administered the claims brought by Fleet under the Insurance Policy. FFG is responsible for the actions of its agent Chubb.

## The WorldCom Litigation

27. During the policy period of the Insurance Policy (including the extended reporting period), Fleet Securities, Inc. and Robertson Stephens International Ltd. were served with a series of lawsuits arising from the financial collapse of WorldCom, Inc. A listing of the various underlying lawsuits filed against Fleet related to the WorldCom collapse is attached as Exhibit E. Among these WorldCom-related cases was the large securities class action lawsuit and related individual actions that became captioned In Re WorldCom Litigation, pending in the United States District Court for the Southern District of New York.

28. The underlying plaintiffs in the WorldCom Litigation alleged that wrongful acts by numerous financial institutions, including Fleet, consisting of alleged wrongful acts in the rendering or failing to render professional services and

bond underwriting services, resulted in substantial losses for which Fleet was liable to the plaintiffs.

29. On February 12, 2003, Fleet notified Chubb of a claim relating to the WorldCom Litigation and sought FFG's consent to retain defense counsel. A copy of the letter is attached hereto as Exhibit F. Fleet vigorously defended the WorldCom Litigation, which was factually and legally complex, and which raised a number of significant and novel issues for court resolution. The large New York class action case that was part of the WorldCom Litigation was scheduled for a jury trial to begin in late March 2005.

30. By Memorandum of Agreement dated March 2, 2005, Fleet reached a settlement with the plaintiff class in the large New York class action that was part of the WorldCom Litigation. That settlement called for Fleet to make a cash payment to the plaintiffs in exchange for a release of all claims. The amount of this settlement agreed to by Fleet was reasonable under the circumstances, especially in light of the fact that parties similarly situated to Fleet have paid or agreed to pay similar or substantially larger amounts to settle the claims of the WorldCom Litigation plaintiffs against them.

31. Fleet's settlement payment and defense costs incurred in the WorldCom Litigation exceed the retention in the Insurance Policy.

**Defendants' Refusal to Honor Their Obligations**

32. On August 30, 2004, Chubb, on behalf of FFG and pursuant to the Claim Administration Agreement, issued a reservation of rights letter to Fleet regarding the WorldCom Litigation. A copy of the letter is attached hereto as Exhibit G. While Chubb identified several potential exclusions, it stated that "it appears that the WorldCom Securities Litigation potentially implicates only Section 4 (Blanket Professional Liability) of the Policy." Exhibit G, at 4.

33. Fleet at all times kept Chubb apprised of the material events in the defense of the WorldCom Litigation and also with respect to settlement discussions with the WorldCom Litigation plaintiffs. Chubb also was fully apprised of the material developments in the WorldCom Litigation because Chubb insured a number of similarly situated entities that also were defendants in the WorldCom Litigation. Chubb, however, repeatedly and unjustifiably refused to acknowledge coverage or to consent to a settlement on behalf of Fleet for the WorldCom Litigation.

34. Fleet has repeatedly requested that Chubb honor the promises set forth in the Insurance Policy and the Claim Administration Agreement and pay Fleet for its defense costs incurred and the settlement payment made in the WorldCom Litigation. A copy of Fleet's March 18, 2005 demand letter to Chubb is attached as Exhibit H. Chubb has wrongfully and without basis in law or fact refused to pay

Fleet for these losses in the WorldCom Litigation and further has wrongfully failed and refused to engage in any meaningful settlement discussions with respect to Fleet's claims for coverage. Defendants' wrongful acts have forced Plaintiff to pursue this coverage litigation to obtain insurance benefits.

**COUNT I**
**(Breach of Contract -- Bulfinch)**

35. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-34.

36. The Insurance Policy is an insurance contract pursuant to which FFG was paid a substantial premium in exchange for providing broad insurance coverage for Fleet's losses arising from the defense and settlement of the WorldCom Litigation. Bulfinch, as successor-in-interest to FFG, wrongfully repudiated the coverage obligations to Fleet for the WorldCom Litigation, which was a breach of the Insurance Policy.

37. As a result of FFG's breach of the Insurance Policy, Plaintiff sustained and will continue to sustain substantial damages, in an amount to be established at trial, for which Bulfinch, as successor-in-interest to FFG, is liable to Plaintiff.

**COUNT II**
**(Breach of Contract -- Chubb)**

38. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-37.

39. Chubb and FFG intended to confer and did confer upon Fleet the benefits of the claim administration services that FFG and Chubb were obligated to provide under the Insurance Policy and the Claim Administration Agreement. Fleet is and was at all relevant times an intended third-party beneficiary of the Claim Administration Agreement between Chubb and FFG.

40. Chubb, pursuant to the broad authority granted to it under the Claim Administration Agreement, wrongfully repudiated the coverage obligations to Fleet under the Insurance Policy for the WorldCom Litigation.

41. As a result of Chubb's breach of the Claim Administration Agreement, FFG did not pay Plaintiff for its losses arising from the defense and settlement of the WorldCom Litigation, and Plaintiff sustained and will continue to sustain substantial damages, in an amount to be established at trial, for which Chubb is liable to Plaintiff.

**COUNT III**
**(Declaratory Judgment – Bulfinch and Chubb)**

42. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-41.

43. Fleet paid substantial premiums to FFG in exchange for the Insurance Policy which covers Fleet for the losses it sustained in the WorldCom Litigation.

44. At all relevant times Chubb handled and otherwise administered the claims brought by Fleet under the Insurance Policy, and made all relevant decisions with respect to the denial of coverage and refusal to discuss settlement with Fleet regarding the WorldCom Litigation.

45. Bulfinch, as successor-in-interest to FFG, and Chubb have wrongfully refused to pay Fleet for the defense costs incurred and settlement payment in the WorldCom Litigation, and have otherwise repudiated the coverage obligations to Fleet under the Insurance Policy.

46. Bulfinch, as successor-in-interest to FFG, owed an obligation to pay Fleet's defense costs in the WorldCom Litigation. Bulfinch, as successor-in-interest to FFG, owes an obligation to Fleet to reimburse Fleet in full for the amount it paid to plaintiffs in settlement of the WorldCom Litigation.

47. Bulfinch, as successor-in-interest to FFG, acting at the direction of Chubb, has failed and refused to indemnify Fleet for its losses in the WorldCom Litigation, causing substantial monetary damages to Plaintiff, thereby creating an actual controversy.

48. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration that:

a. Fleet's defense costs and the settlement payments made and to be made to the underlying plaintiffs in the WorldCom Litigation are insured losses under the Insurance Policy;

b. Chubb has the duty and is obligated to Plaintiff under the Claim Administration Agreement to determine that Fleet's defense costs and the settlement payments made and to be made to the underlying plaintiffs in the WorldCom Litigation are covered and insured losses under the Insurance Policy;

c. Bulfinch, as successor-in-interest to FFG, is obligated under the Insurance Policy to pay Plaintiff for all defense costs incurred to date in defending the WorldCom Litigation; and

d. Bulfinch, as successor-in-interest to FFG, is obligated under the Insurance Policy to pay and indemnify Plaintiff in full, to the limit of the Insurance Policy, for all sums Plaintiff has paid in settlement of the WorldCom Litigation.

**COUNT IV**
**(Bad Faith Claims Handling – Bulfinch and Chubb -- R.I. Gen. Laws § 9-1-33 (1956))**

49. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-48 above.

50. Bulfinch, as successor-in-interest to FFG, by virtue of the Insurance Policy, owed Fleet a duty of good faith to review, analyze and act on any and all claims tendered to them by Fleet under the Insurance Policy.

51. Chubb, by virtue of its role as reinsurer and its promises made in the Claim Administration Agreement, owed Fleet a duty of good faith to review,

analyze, and act on any and all claims tendered to it by Fleet under the Insurance Policy.

52. Bulfinch, as successor-in-interest to FFG, and Chubb acted intentionally, recklessly, unreasonably and with willful disregard for their duties to Fleet in wrongfully refusing to acknowledge coverage for the WorldCom Litigation.

53. As a result of Bulfinch's and Chubb's conduct in violation of R.I. Gen. Laws § 9-1-33 (1956), Plaintiff is entitled to recover compensatory damages, as well as its attorneys' fees in bringing this action.

**COUNT V**
**(Tortious Interference with Contractual Relations -- Chubb)**

54. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-53 above.

55. Fleet, along with its subsidiaries, and FFG were parties to a contract, namely, the Insurance Policy.

56. Chubb was aware of that contract between Fleet, and its subsidiaries, and FFG and, in fact, contractually bound itself to administer claims made by Fleet under the Insurance Policy.

57. Chubb intentionally and wrongfully, without any privilege or justification, interfered with the contract between Fleet, including its subsidiaries, and FFG by its actions as described in this Complaint.

58. Not only was Chubb the claims administrator for the primary Insurance Policy, but Chubb also was one of the reinsurers of coverage under that Policy, providing a quota share of 30 percent of the $100 million reinsurance limit of liability. Chubb breached its duties under the Claim Administration Agreement because it was acting in its interests as a reinsurer, attempting to avoid coverage, rather than as a neutral, objective claims administrator, as required by the Claim Administration Agreement.

59. Chubb put its own interests ahead of those of Fleet and FFG and, with deliberate and reckless disregard for their rights, Chubb denied both Plaintiff and FFG the benefits of their bargain under the Insurance Policy.

60. As a direct and proximate result of Chubb's intentional and wrongful interference with the contract between Fleet and FFG, Plaintiff has sustained substantial damages.

**COUNT VI**
**(Negligence -- Chubb)**

61. Plaintiff incorporates by reference, as if fully set forth herein, the facts set forth above in paragraphs 1-60 above.

62. Fleet was at all times an intended third-party beneficiary of the Claim Administration Agreement between FFG and Chubb.

63. Chubb owed a duty to Fleet and the other intended beneficiaries of that agreement to administer the Insurance Policy as required by the Claim Administration Agreement.

64. Chubb also owed a duty to Fleet to comply with all applicable laws and regulations, including those related to claim settlement practices.

65. Chubb was required to perform its duties and obligations to both Fleet and to FFG under the Claim Administration Agreement fairly and in good faith.

66. Chubb was required to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner, and in good faith.

67. Chubb was required, and owed a duty to Fleet, to put Fleet's interest ahead of its own.

68. Chubb had an obligation and duty to promptly and fully respond to Fleet, to investigate its claim in a timely fashion and in good faith, to subject its claim to appropriate review, and settle a claim, where appropriate.

69. Chubb has refused to authorize any payment to Plaintiff under the Insurance Policy, without a reasonable basis in fact or law.

70. Chubb's intentional and deliberate withholding of payments it knows are in fact owed to Plaintiff under the Insurance Policy constitutes bad faith as a matter of law.

71. As a direct and proximate result of Chubb's breach of its duties as discussed herein, Plaintiff has sustained substantial damages.

**WHEREFORE**, Plaintiff Bank of America Corporation, as the successor-in-interest to FleetBoston Financial Corporation, requests that the Court enter judgment in its favor against Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., and the Chubb Defendants (collectively, "Defendants"), as follows:

1. Declaring that Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., was and is obligated pay Plaintiff for defense costs incurred by or on behalf of Fleet in defending against the claims in the various actions comprising the WorldCom Litigation; that Bulfinch Indemnity Co., Ltd., as the successor-in-interest to FFG Insurance Co. Ltd., breached this obligation; that Chubb has the duty and is obligated to Plaintiff under the Claim Administration Agreement to determine that Fleet's defense costs and the settlement payments made and to be made to the underlying plaintiffs in the WorldCom Litigation are covered and insured losses under the Insurance Policy; and that Defendants are obligated to indemnify Plaintiff for the full amount of the

settlement payments made and to be made on behalf of Fleet in the various actions comprising the WorldCom Litigation, plus interest, and defense fees and costs in an amount to be proven at trial.

2. Awarding Plaintiff damages against all Defendants, jointly and severally, in an amount to be determined at trial, or otherwise, including, but not limited to, settlement payments, direct damages, consequential damages, and incidental damages, together with pre-judgment and post-judgment interest, costs and payments and all other sums incurred to date by or on behalf of Fleet, including but not limited to counsel fees and expert fees, jointly and severally against all Defendants, for Defendants' wrongful breach of contract, bad faith claims handling, negligence, and tortious interference with contractual relations.

3. For punitive damages in an amount to be determined at trial.

4. For all costs, including reasonable attorneys' fees, and all other reasonable litigation expenses for the litigation of this action.

5. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands that all claims in this action be tried to a jury.

Respectfully submitted,

BANK OF AMERICA, as successor to FLEETBOSTON FINANCIAL CORPORATION

Steven E. Snow, R.I. Bar No. 1774
Howard Merten, R.I. Bar No. 3171
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903–7104
Tel: (401) 861–8200
Fax: (401) 861–8210

Of Counsel:

Dwight J. Davis
Martin M. McNerney
Anthony P. Tatum
King & Spalding LLP
191 Peachtree Street
Atlanta, GA 30303-1763
(404) 572-4600
Attorneys for Plaintiff

August 23, 2005