# SECTION 4

## Bankers Professional Liability

Policy Number: FFG 00004

**SECTION 4**

**BANKERS PROFESSIONAL LIABILITY**

**I. INSURING AGREEMENT**

The **Insurer** will pay on behalf of the **Insureds** for all **Loss** which the **Insureds** shall become legally obligated to pay as a result of any **Claim** first made against the **Insureds** during the **Policy Period** or, if exercised, the **Extended Reporting Period**, arising out of any **Wrongful Act** committed by the **Insureds**, or any other person for whose actions the **Insured** is legally responsible, while performing **Professional Services** including failure to perform **Professional Services**.

**II. DEFINITIONS**

Whenever used in this section the following items shall have the meanings indicated:

A. **Claim** shall mean:

i) any judicial, administrative or arbitration proceeding initiated against one or more of the **Insureds** in any state or federal court or administrative agency, in which the **Insureds** could be subjected to a binding adjudication of liability for damages or other civil relief; or

ii) any written notice from a third party that it is the intention of such third party to hold one or more **Insureds** responsible for the results of any specified **Wrongful Act**.

B. **Defense Costs** shall mean that part of **Loss** consisting of reasonable costs, charges, fees, (including but not limited to attorneys' fees and experts' fees) and expenses, (other than regular or overtime wages, salaries or fees of the director, officers or employees of the **Insured Organization**) incurred in defending or investigating **Claims** and the premium for appeal, attachment or other similar bonds.

C. **Financial Impairment** shall mean the status of the **Insured Organization** resulting from:

i) the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitation or similar official to take control of, supervise, manage or liquidate the **Insured Organization**, or

ii) the **Insured Organization** becoming a debtor in possession.

D. **Insured Organization, Insured Individuals** and **Insureds** shall mean:

i) **Insured Organization** shall mean the **Parent Corporation** identified in Item 1 of the Policy Declarations and any **Subsidiary**;

ii) **Insured Individuals** shall mean:

(a) any past, present or future director, officer or employee of the **Insured Organization** and

(b) any individual with a title of marketing officer for any insurance agency of the **Insured Organization**

in his/her capacity as a director, officer, employee of the **Insured Organization** or as respects (b) above, in his/her capacity as a consultant of the **Insured Organization.**

iii) **Insured(s)** shall mean the **Insured Organization** and the **Insured Individuals,** or any one of them.

iv) **Insureds** shall also include the estates, heirs, legal representatives or assigns of deceased persons who were **Insureds** at the time of the **Wrongful Act** upon which the **Claim** or **Claims** are based, and the legal representatives or assigns of **Insureds** in the event of their incompetency, insolvency or bankruptcy.

E. **Related Wrongful Acts** shall mean **Wrongful Acts** that arise out of, are based on, related to, or are in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

F. **Loss** means the total amount which any **Insured** becomes legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** and the **Extended Reporting Period**, if exercised, made against the **Insureds** for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs** and punitive and exemplary damages which the **Company** becomes legally obligated to pay, provided the punitive or exemplary damages are otherwise covered and are insurable under the law pursuant to which this Policy is construed.

**Loss** does not include:

i) regular or overtime wages, salaries or fees of the **Insured Individuals**;

ii) diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value unless caused by a **Wrongful Act** of the **Insureds** in the execution or implementation of investment advice or investment decision;

iii) loss of the actual money, securities, property or other items of value in the custody or control of the **Insureds**;

iv) fines or penalties imposed by law, including but not limited to, the multiple portion of any multiplied damage award, or other sanctions which may be deemed uninsurable under the law pursuant to which this Policy shall be interpreted;

v) amounts otherwise reimbursable to the **Insureds** by the trust, estate, plan or fund and/or any similar entity and/or the sponsor of any such trust, estate, plan or fund and/or any similar entity;

vi) principal, interest, or other monies either paid, accrued or due as the result of any loan, lease or extension of credit.

G. **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include; without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

H. **Professional Services** shall mean only those services performed or required to be performed by the **Insureds** for compensation for a customer or client of the **Insureds**, pursuant to an agreement between such customer and the **Insureds** provided, however, that **Professional Services** shall not include:

i) medical or health care services,

ii) architectural services,

iii) the practice of law or the rendering of legal services for other than the **Insureds**,

iv) services performed by an entity as to which the **Insureds** shall have acquired ownership or control as security for a loan or other extension of credit.

Notwithstanding, Professional Services shall include Financial Planning services whether or not a fee was charged.

I. **Subsidiary**, either in the singular or plural, means any organization of which the **Parent Organization**, as identified in Item I of the **Policy Declarations**, owns more than 50% of the outstanding voting stock either directly or through one or more of its **Subsidiaries** prior to the inception date of this policy.

J. **Wrongful Act** means:

(a) any actual or alleged statement, misstatement, error, omission or negligent act in rendering or failing to render **Professional Services** or in conducting **Lending Activity**.

(b) any dishonest, fraudulent or malicious act or omission on the part of an **Employee** committed
(i) with the intent to cause a third party to sustain a loss, or
(ii) with reckless disregard as to whether a third party might sustain a loss, or

(iii) for personal financial gain for self or others in collusion.

(c breach of trust or breach of fiduciary duty or breach of professional duty or misrepresentation or breach of confidentiality, or

(d) defamation on the part of an **Employee**, or

(e) any breach of intellectual property rights

committed or allegedly committed by the **Insured** or for which the **Insured** is legally liable.

K. **Lending Activity** means:

(1) the granting or failure to grant an extension of credit, or

(2) the termination, cancellation, acceleration, withdrawal or failure to advance funds in connection with any extension of credit, or

(3) the foreclosure on or the taking possession, assignment or subordination of any collateral in connection with any extension of credit, or

(4) the releasing or failure to release any information in connection with any extension of credit, or

(5) the imposition of financial, business or management controls or requirements upon any customer of an **Insured** to whom an extension of credit has been granted.

L. **Employee** means:

All persons who were, now are, or shall be directors, officers or employees of the **Insured** including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy, or persons performing services on behalf of the **Insured** and for whose **Wrongful Acts** the **Insured** is legally responsible.

## III. EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Insureds**:

A. based upon, arising from or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insureds** on or prior to January 1, 1988, or the same or substantially the same fact, circumstance or situation underlying or alleged therein;

B. arising out of any dishonest or deliberately criminal or deliberately fraudulent act or omission, acting in bad faith, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or regulation on the part of the **Insureds** or any person for whose actions the **Insureds** are legally

responsible, provided, however, that this exclusion shall not apply unless a judgement or other final adjudication adverse to such **Insured** establishes such **Claim** was brought about or contributed to by conflicts of interest, any dishonest or deliberately criminal or deliberately fraudulent act or omission, acting in bad faith, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or regulation on the part of the **Insureds** or any person for whose actions the **Insureds** are legally responsible;

C. based upon, arising from or in consequence of:

i) any **Wrongful Act** or any fact, circumstance or situation that has been the subject of notice under any policy of insurance in effect prior to the inception date of this policy, or

ii) any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** that has been the subject of such notice would constitute **Related Wrongful Acts**;

D. arising out of the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm (other than the **Insured**), insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such;

E. based upon, arising from or in consequence of any pension, profit sharing, health and welfare or other employee benefit plan or trust, including but not limited to any violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar provisions of any federal, state of local statutory law or common law, sponsored or established by the **Insured Organization** for the **Insured Individuals**;

F. based upon, arising from or in consequence of defamation, discrimination, libel, slander, wrongful termination of employment, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault or battery;

G. for bodily injury, sickness, disease, mental or emotional distress or anguish, or death of any person, or damage to or destruction of any tangible property including loss of its use;

H. based upon, arising from or in consequence of (1) the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or atmosphere; or (2) any direction or request that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so; including but not limited to any **Claim** for any financial Loss to the Insureds, its security holders or its creditors based upon, arising from, or in consequence of the matters described in (1) or (2) of this exclusion;

I. by, on behalf of, or at the behest of any **Insureds** against any other **Insureds**, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part by any **Insured**, except where the

claimant is an **Insured Individual** and was provided with or was entitled to be provided with **Professional Services** and is bringing such **Claim** solely in his capacity as a customer of the **Insured Organization**, where such **Claim** is brought without the solicitation, assistance or participation of any other **Insureds**;

J. based upon, arising from or in consequence of any performance of or failure to perform, **Professional Services** for the account or benefit of any **Insured Organization**;

K. based upon, arising from or in consequence of the liability of a party, other than the **Insureds**, assumed by the **Insureds** pursuant to contract, except liability which would have attached in absence of such contract;

L. by, on behalf of, or at the behest of any person or concern (including but not limited to any shareholder, bondholder, or debentureholder), their estate, heirs, legal representatives or assigns, with a legal or equitable interest in any stock, bond, debenture, or other form of security of the **Insureds** when such **Claim** is based upon, arises out of, or pertains to any interest in said security; however, this exclusion shall not apply to any Loss involving the **Insured's** investment in any of its own stock via the **Insured's** trust operations;

M. based upon, arising from or in consequence of any acquisition or sale of securities by the **Insureds** for their own account, or any disclosure requirements in connection therewith;

N. for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the **Insureds**, or for upon allegations against any of the **Insureds** of excessive fees, commissions, costs and other charges;

O. based upon, arising from or in consequence of any express written warranties or guarantees made in connection with **Professional Services**;

P. based upon, arising from, or in consequence of bodily injury, mental or emotional distress, sickness, disease, death or damage to or destruction of any tangible property including loss of use thereof and including all forms of radioactive contamination:

i) under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be covered under any such policy except for the exhaustion of its limit of liability,

ii) resulting from the **Hazardous Properties** of **Nuclear Material** with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof, or (2) the **Insured Person** is or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or entity, or

iii) resulting from the **Hazardous Properties** of **Nuclear Material** and arising out of the operation of a **Nuclear facility**.

Q. based upon, arising from, or in consequence of securities trading, investment management services, financial investment advice and the purchase and/or sale of securities on behalf of customers for:

(i) any **Claim** brought by or on behalf of any clearing agency;

(ii) any **Claim** arising out of any function of any Insured as a specialist or market maker for any securities or arising out of failing to make a market for any securities;

(iii) any actual or alleged trading or failing to trade commodities, commodity futures contracts, or any type or option contract, except covered stock options;

(iv) any actual or alleged trading or failing to trade in any market outside the United States of America, its territories and possessions, and Canada;

(v) any **Claim** brought by or on behalf of the Securities Investor Protection Corporation or any governmental authority or any self regulatory or regulatory authority regardless of the capacity it is brought in, or brought by the successors or assigns od any of the aforementioned; however, this exclusion shall not apply to a Claim brought by any of the aforementioned to enforce its rights as a direct client of the securities broker/dealer named in Item 1 of the Declarations in the ordinary course of business;

(vi) any actual or alleged rendering of or failure to render **Professional Services** to any securities broker/dealer other than a dealer who buys, sells or trades in securities exclusively as a principal for its own account;

(vii) any **Claim** arising out of any actual or alleged activities in connection with any equity security priced under $5.00, however, this exclusion shall not apply if the security is:

a) registered or approved for registration upon notice of issuance on a national securities exchange,
b) authorized or approved for authorization upon notice of issuance for quotation in the NASDAQ system,
c) issued by an investment company registered under the Investment Company Act of 1940 (as amended);

R) as respects BankBoston Corporation, based upon, arising from, or in consequence of **Wrongful Acts** or **Related Wrongful Acts** where all of any part of such acts were committed, attempted, or allegedly committed or attempted prior to October 1, 1999.

Any **Wrongful Act** pertaining to any **Insured Individual** shall not be imputed to any of the other **Insured Individual** for the purposes of determining the applicability of the exclusions in

this section of the policy.

## IV. AGGREGATE LIMIT OF LIABILITY AND RETENTION AMOUNTS

All **Loss** arising out of the same **Wrongful Act** and all **Related Wrongful Acts** of the **Insureds** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Period** in which a **Claim** is first made against the **Insureds** alleging any such **Wrongful Act** or **Related Wrongful Acts**.

The Insurer's maximum liability for each **Loss**, shall be the **Limit of Liability** for each **Loss** set forth in Item 6 of the Declarations. The **Insurer's** maximum aggregate liability for all **Loss** on account of all Claims first made during the same **Policy Period**, shall be the **Limit of Liability** for each **Policy Period** set forth in Item 6 of the Declarations.

The **Insurer's** liability shall apply only to that part of each **Loss** which is excess of the **Retention** as set forth in Item 7 of the Declarations.

The **Limit of Liability** available during the **Extended Reporting Period**, if exercised, shall be the remaining portion, if any, of the **Limit of Liability** provided by the immediately preceding **Policy Period**.

## V. DEFENSE AND SETTLEMENT

Subject to this section, it shall be the duty of the **Insureds** and not the duty of the **Insurer** to defend **Claims** made against the **Insureds**.

The **Insured** shall have the sole obligation under this **Policy** to retain defense counsel, which shall be subject to the consent of the **Insurer**. Such consent shall not be unreasonably withheld.

The **Insured** agrees not to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Insurer's written consent unless such **Claim** does not exceed 50% of the **Retention**. The **Insurer** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission for any **Claim** in excess of 50% of the **Retention** for which it has not consented.

The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that appears reasonably likely to be covered in whole or in part by this Policy.

The **Insureds** agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** reasonably requests and agree that, in the event of a **Claim**, the **Insureds** will do nothing that may prejudice the **Insurer's** position or its potential or actual rights of recovery.

**Defense Costs** are part of and not in addition to the **Limit of Liability** set forth in Item 6 of the **Declarations** for this Policy, and the payment by the **Insurer** of **Defense Costs** reduces such **Limit of Liability**.

The **Insurer** may in its absolute discretion advance **Defense Costs** prior to the final disposition of a **Claim**.

## VI. REPORTING AND NOTICE

Based upon the knowledge of the Corporate Risk Manager or Corporate General Counsel, the **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Insurer** written notice as soon as practicable but in no event later than ninety (90) days after the termination of the **Policy Period**, of any **Claim** made against the **Insureds** for a **Wrongful Act**.

If any **Insureds** becomes aware of circumstances which could give rise to a **Claim** and gives written notice of such circumstance(s) to the **Insurer** during the **Policy Period**, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period** in which the circumstances were first reported to the **Insurer**.

The **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Insurer** such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insureds** first became aware of the **Claim** or circumstances.

## VII. CESSATION OF SUBSIDIARIES

In the event an organization ceases to be a **Subsidiary** before or after the Inception Date of this Policy, coverage with respect to such **Subsidiary** and its **Insured Individuals** shall continue until termination of this **Policy** but only with respect to **Claims** for **Wrongful Acts** committed, attempted or allegedly committed or attempted prior to the date such organization ceased to be a **Subsidiary**.

## VIII. REPRESENTATIONS AND APPLICATION FORM

It is agreed by the **Insureds** that the particulars and statements contained in the Application Form and the attachments and materials submitted with the Application Form (which shall be retained on file by the **Insurer** and shall be deemed attached hereto, as if physically attached hereto) are true and are the basis of this **Policy** and are to be considered as incorporated in and constituting a part of this **Policy**. It is further agreed by the **Insureds** that such particulars and statements are material to the decision to issue this Policy and that the Policy is issued in reliance upon the truth of such particulars and statements.

## IX. ESTATES AND LEGAL REPRESENTATIVES

Coverage shall extend to **Claims** for the **Wrongful Acts** of **Insured Individuals** made against the estates, heirs, legal representatives or assigns of **Insured Individuals** who are deceased or against the legal representatives or assigns of **Insured Individuals** who are incompetent, insolvent or bankrupt.

X. **EXTENDED REPORTING PERIOD**

(1) If this coverage section is nonrenewed, then the **Company** shall have the right, on payment of an additional premium as shown in Item 14. D. 1) of the Policy General Conditions, to an extension of the coverage granted by this coverage section. Such coverage shall be for any **Claim** first made against the **Insured Persons** during the period specified by Item 14. D. 2) ( c) of the Policy General Conditions after the policy termination date, but only with respect to any **Wrongful Act** committed before the policy termination date or the date of elimination of coverage for subsequent **Wrongful Acts**, whichever date shall be earlier. This period is referred to in this coverage section as the **Extended Reporting Period**.

(2) As a condition precedent to the right to purchase the **Extended Reporting Period**, the total premium for this Policy must have been paid. The right to purchase the **Extended Reporting Period** shall terminate unless written notice is given to the **Insurer** by certified mail within ten (10) days after the policy termination date, together with full payment of the premium for the **Extended Reporting Period**. In the event that such notice and premium payment are not so given to the **Insurer** by the **Parent Corporation** there shall be no right to purchase the **Extended Reporting Period** at any later date.

(3) In the event that the **Extended Reporting Period** is purchased, the entire premium for the **Extended Reporting Period** shall deemed earned at its commencement.

(4) The purchase of the **Extended Reporting Period** shall not in any way increase the **Limit of Liability** as shown in Item 6 of the Policy Declarations.

**Endorsement 1**
**To**
**Section 4**

It is understood and agreed that effective October 1, 1999 Policy Number: FFG 00004, Section 4, BANKERS PROFESSIONAL LIABILITY, is amended as follows:

Paragraph V of Exclusion Q of Section 4-BPL is deleted in its entirety and replaced by the following:

Any **Claim** brought by or on behalf of the Securities Investor Protection Corporation or any governmental authority or any self regulatory or regulatory authority regardless of the capacity it is brought in, or brought by the successors or assigns of any of the aforementioned; however, this exclusion shall not apply to a **Claim** brought by any of the aforementioned to enforce its rights as a direct client of the **Insured** in the ordinary course of business;

---

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

Gwen Blakeney
Authorized Representative
Aon Insurance Managers (Bermuda) Ltd.
As Managers

April 16, 2001
Date

[signature]
Authorized Representative
Aon Insurance Managers (Bermuda) Ltd.
As Managers

April 17, 2001
Date