1872

RECEIVED
SEP 13 2004
BY:

CHUBB

CHUBB GROUP OF INSURANCE COMPANIES

August 30, 2004

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

FFG Insurance Co. Ltd.
Attn: Nancy Gray
Director
AON Insurance Managers (Vermont)
76 St. Paul Street
Burlington, VT 05401

| | | |
|---|---|---|
| Re: | Insured: | FleetBoston Financial Corporation |
| | Policy: | Combined Risk Protection Program (FFG 00004) |
| | Litigation: | *In Re WorldCom Consolidated Class Action Complaint*, Case No. 02 CV 3288 (DLC), S.D.N.Y. (filed Oct. 11, 2002); *In Re WorldCom Securities Litigation*, Case No. 02 CV 3288 (DLC), S.D.N.Y. (filed Oct. 11, 2002); *SunTrust Bank, et al. v. Ebbers, et al.*, Case No. 3:02 CV 1499 WS, S. D. Miss. (filed Sept. 16, 2002) |

Dear Ms. Gray:

I am writing on behalf of Chubb & Son ("Chubb"), Claims Manager for FFG Insurance Company, Ltd. ("FFG") pursuant to the Claim Administration Agreement (the "Agreement") between Chubb and FFG dated February 20, 2000, in connection with the above-referenced litigation (the "WorldCom Securities Litigation"), which has been submitted for coverage under FFG Policy No. 00004 (the "Policy"). Pursuant to Section 2 of the Agreement, Chubb is responsible for handling all facets of Claims through final settlement, including investigation, recommendation of legal counsel, handling, negotiating, denial or settling of Claims. Please direct all future communications intended for FFG on these matters to my attention.[1]

[1] Chubb also understands that you have provided notice of the WorldCom Securities Litigation under "Designated Insured Persons Insurance" Policy No. 7022-67-83(B) and Excess Policy No. 7023-05-

This letter is intended to provide you with FFG's current views regarding coverage for the WorldCom Securities Litigation under the Policy. Based on the information made available to date, FFG reserves its rights as set forth more fully in this letter.

The WorldCom Securities Litigation

FleetBoston Financial Corporation ("Fleet") has provided notice to FFG under the Policy of lawsuits filed against its wholly-owned subsidiary, Fleet Securities, Inc. ("Fleet Securities"), in connection with the WorldCom Securities Litigation: *In Re WorldCom Consolidated Class Action Complaint*, Case No. 02 CV 3288 (DLC), S.D.N.Y. (filed Oct. 11, 2002); *In Re WorldCom Securities Litigation*, Case No. 02 CV 3288 (DLC), S.D.N.Y. (filed Oct. 11, 2002); *SunTrust Bank, et al. v. Ebbers. et al.*, Case No. 3:02 CV 1499 WS, S. D. Miss. (filed Sept. 16, 2002). Additionally, Fleet has noted that other complaints, raising similar allegations, name at least the lead underwriters for the note offering in which Fleet Securities participated as a member of the underwriting syndicate and that these lead underwriters, by letters to Fleet Securities dated December 30, 2002, have advised Fleet Securities and others that they will look to the members of the syndicate for their proportionate share of the legal expense in connection with the lawsuits.

The WorldCom Securities Litigation consists of complaints brought by individuals and institutions who purportedly purchased securities of WorldCom as part of several different public offerings – primarily bond offerings – and in the secondary market. The complaints can be broken down into two categories: class action complaints and individual complaints (the "Individual Actions"). The class action complaints were consolidated in the United States District Court for the Southern District of New York in August 2002 under the caption *In re WorldCom, Inc. Securities Litigation* (Case. No. 02-CV-3288). Plaintiffs filed a consolidated class action complaint on October 11, 2002 and a first amended consolidated class action complaint on December 1, 2003 (the "Amended Consolidated Class Action Complaint"). The Individual Actions were filed in both state and federal courts throughout the United States. Many of the Individual Actions filed in state courts have been, and continue to be, removed to federal court and transferred to the

(Continued . . .)
13(A). Those policies provide coverage only for claims against certain individuals and not for claims against Fleet or its subsidiaries. Accordingly, those policies do not appear to be implicated by the WorldCom Securities Litigation. However, Chubb continues to reserve all of its rights under those policies and at law.

Southern District of New York for coordinated or consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407.

The complaints name as defendants certain financial institutions that purportedly participated as underwriters of the securities offerings at issue (the "Underwriter Defendants"), including Fleet Securities. Although the particular securities offerings at issue in each complaint differ in part, all of the complaints in the WorldCom Securities Litigation contain essentially the same allegations of violations by the Underwriter Defendants of federal securities laws and/or state securities or common law.

The Amended Consolidated Class Action Complaint against the Underwriter Defendants, including Fleet Securities, is based on a bond offering that occurred in May 2001. Plaintiffs allege that Fleet Securities served as an underwriter for the May 2001 offering. The majority of the Individual Actions that have been the subject of notice under the above-referenced Policy also assert causes of action based on the May 2000 offering; however, FFG understand that Fleet Securities did not participate in that offering.

The complaints allege that the registration statements and prospectuses used in connection with the securities offerings at issue were materially false and misleading because they included and incorporated by reference WorldCom's financial statements, which plaintiffs allege falsely reported, among other things, the revenues, earnings, pre-tax income, expenses, assets and net worth of WorldCom. These reports allegedly resulted from various improper accounting practices at the company, including: (1) improperly treating line cost expenses; (2) recording excessive "one time" write-offs or reserves in connection with acquisitions, and later using these reserves to increase reported earnings; (3) inflating earnings by misclassifying assets obtained in connection with acquisitions; (4) failing to record impairment in the value of goodwill on its balance sheets; (5) improperly capitalizing internal software development costs; and (6) recognizing revenue from a variety of sources that was neither earned nor realizable. The complaints further allege that the registration statements and prospectuses for the May 2001 offering were materially false and misleading because they failed to disclose inherent conflicts of interest that allegedly existed between Salomon Smith Barney, Inc. ("Salomon") and WorldCom. In addition, the complaints allege that numerous narrative statements in the registration statements and prospectuses regarding the strength of WorldCom's financial situation were false and misleading.

Plaintiffs generally allege that the Underwriter Defendants, including Fleet Securities, are liable to plaintiffs because they failed to exercise reasonable care and due diligence in ensuring the accuracy and completeness of the information provided in the registration statements and prospectuses used in connection with the securities offerings at issue. Specifically, the complaints allege that the Underwriter Defendants were responsible for the contents and dissemination of the registration statements and prospectuses and, as a result of their purported access to WorldCom's internal corporate information, "knew or should have known" of the material misstatements and omissions contained in those documents.

In addition, plaintiffs allege that as a result of its purported participation in multi-billion dollar back-up credit facilities held by WorldCom, the Underwriter Defendants, including Fleet Securities, had access to WorldCom's true financial condition. The plaintiffs allege that WorldCom and the Underwriter Defendants, including Fleet Securities, orchestrated the bond offerings in order to avoid the necessity of WorldCom drawing down on the back-up credit facilities to pay off its commercial paper and other short-term debt.

Additionally, plaintiffs assert that each of the Underwriter Defendants, including Fleet Securities, knew of, or but for their negligence should have recognized, an alleged conflicted position that Salomon had with respect to WorldCom. Plaintiffs assert that each Underwriter Defendant had a duty to disclose Salomon's alleged conflicted position, and had a duty to conduct its own due diligence and investigations and view Salomon's due diligence and investigation with a degree of skepticism.

Fleet's Combined Risk Protection Insurance Program

FFG issued Combined Risk Protection Program Policy No. FFG 00004 (the "Policy") to Fleet from the Policy Period from October 1, 1999 to January 1, 2003. A $10,000,000 Retention applies to each Claim or Loss. Subject to all of its terms and conditions, the Policy has a Limit of Liability of $100,000,000 in the aggregate. FFG is not liable for amounts in excess of the Policy Limits or within the Retention.

Based on the limited information available to date, it appears that the WorldCom Securities Litigation potentially implicates only Section 4 (Bankers Professional Liability) of the Policy. If Fleet disagrees with this assessment, please let us know. In the event that other insuring agreements or Coverage Sections of the Policy are implicated, additional Policy terms and conditions may apply that limit or bar

coverage for the WorldCom Securities Litigation. Accordingly, FFG reserves all rights, remedies, and defenses under the terms of these other sections of the Policy and applicable law.

Subject to all of its terms and conditions, the Policy provides specified coverage under Section 4 for: "Loss which the Insureds shall become legally obligated to pay as a result of any Claim first made against the Insureds during the Policy Period or, if exercised, the Extended Reporting Period, arising out of any Wrongful Act committed by the Insureds, or any other person for whose actions the Insured is legally responsible, while performing Professional Services including failure to perform Professional Services." Policy, Section 4.I.

The Policy defines "Claim" as:

> (i) any judicial, administrative or arbitration proceeding initiated against one or more of the Insureds in any state or federal court or administrative agency, in which the Insureds could be subjected to a binding adjudication of liability for damages or other civil relief; or written demand for money, services or other monetary or non-monetary relief;
>
> (ii) any written notice from a third party that it is the intention of such third party to hold one or more Insureds responsible for the results of any specified Wrongful Act.

Policy, Section 4.II.A. The Policy also provides:

> All Loss arising out of the same Wrongful Act and all Related Wrongful Acts of the Insureds shall be deemed one Loss . . .

Policy, Section 4.IV. "Wrongful Act" is defined as:

> a) any actual or alleged statement, misstatement, error, omission or negligent act in rendering or failing to render Professional Services or in conducting Lending Activity.

b) any dishonest, fraudulent or malicious act or omission on the part of an Employee committed:

(i) with the intent to cause a third party to sustain a loss, or

(ii) with reckless disregard as to whether a third party might sustain a loss, or

(iii) for personal financial gain for self or others in collusion.

(c) breach of trust or breach of fiduciary duty or breach of professional duty or misrepresentation or breach of confidentiality, or

(d) defamation on the part of an Employee, or

(e) any breach of intellectual property rights

committed or allegedly committed by the Insured or for which the Insured is legally liable.

Policy, Section 4.II.J. "Related Wrongful Acts" is defined as "Wrongful Acts that arise out of, are based on, related to, or are in consequence of the same related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions or events." Policy, Section 4.II.E.

Based on currently available information, the tendered complaints in the WorldCom Securities Litigation appear to involve the same Wrongful Act or Related Wrongful Acts. Accordingly, FFG will treat any Loss arising from the WorldCom Securities Litigation as part of a single Loss. However, please note that FFG continues its investigation into this matter. To the extent that facts or circumstances develop that warrant treating some or all of the pending matters in the WorldCom Securities Litigation as involving distinct Loss, FFG reserves the right to do so.

FFG notes that several terms and conditions of the Policy may operate to limit coverage for this matter. FFG addresses these Policy provisions in turn.

The Policy applies only to claims for "any Wrongful Act committed by the Insureds, or any other person for whose actions the Insured is legally responsible, while performing Professional Services including failure to perform Professional Services." Policy, Section 4.I. FFG reserves the right to deny coverage for the WorldCom Securities Litigation to the extent that the litigation does not allege "any Wrongful Act committed . . . while performing Professional Services including failure to perform Professional Services."

"Professional Services" is defined as:

> only those services performed or required to be performed by the Insureds for compensation for a customer or client of the Insureds, pursuant to an agreement between such customer and the Insureds provided, however, that Professional Services shall not include:
>
> (i) medical or health care services;
>
> (ii) architectural services;
>
> (iii) the practice of law or the rendering of legal services for other than the Insureds; and
>
> (iv) services performed by an entity as to which the Insureds shall have acquired ownership or control as security for a loan or other extension of credit.
>
> Notwithstanding, Professional Services shall include Financial Planning services whether or not a fee was charged.

Policy, Section 4.II.H.

The Policy affords coverage only for "Loss." That term is defined as:

> the total amount which any Insured becomes legally obligated to pay on account of each Claim and for all Claims in each Policy Period and the Extended Reporting Period, if exercised, made against the Insureds for Wrongful Acts for

> which coverage applies, including, but not limited to, damages, judgments, settlements, costs and Defenses Costs and punitive and exemplary damages which the Company becomes legally obligated to pay, provided the punitive or exemplary damages are otherwise covered and are insurable under the law pursuant to which this Policy is construed.

Policy, Section 4.II.F. "Loss" does not include:

> (ii) diminution in value or damages resulting from the diminution in value of money, securities, property or any other item of value unless caused by a Wrongful Act of the Insureds in the execution or implementation of investment advice or investment decision; and
>
> (iv) fines or penalties imposed by law, including but not limited to, the multiple portion of any multiplied damage award, or other sanctions which may be deemed uninsurable under the law pursuant to which this Policy shall be interpreted.

Policy, Section 4.II.F. FFG reserves the right to deny coverage for matters that fall outside the Policy's definition of "Loss." FFG further reserves the right to deny coverage for amounts that constitute disgorgement, restitution, or payments of amounts to which an Insured was not legally entitled.

Exclusions

The Policy also has several exclusions that may apply to bar or limit coverage for the WorldCom Securities Litigation. In that regard, there is no coverage under the Policy for Claims:

> arising out of any dishonest or deliberately criminal or deliberately fraudulent act or omission, acting in bad faith, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or regulation on the part of the Insureds or any person for whose actions the Insureds are legally responsible, provided, however, that this exclusion shall not apply unless a judgment or other final adjudication adverse to such

> Insureds establishes such Claim was brought about or contributed to by conflicts of interest, any dishonest or deliberately criminal or deliberately fraudulent act or omission, acting in bad faith, gaining any profit or advantage to which one is not legally entitled or deliberate non-compliance with any statute or regulation on the part of the Insureds or any person for whose actions the Insureds are legally responsible.

Policy, Section 4.III.B. FFG reserves the right to deny coverage for the WorldCom Securities Litigation to the extent that this exclusion applies.

The Policy also bars coverage for Claims:

> for the reimbursement of fees, commissions, costs or other charges paid or payable to any of the Insureds, or for upon allegations against any of the Insureds of excessive fees, commissions, costs and other charges.

Policy, Section 4.III.N. FFG reserves the right to deny coverage for the WorldCom Securities Litigation to the extent that the WorldCom Securities Litigation is determined to fall within the scope of this exclusion.

The Policy excludes from coverage Claims:

> based upon, arising from, or in consequence of securities trading, investment management services, financial investment advice and the purchase and/or sale of securities on behalf of customers for:
>
> > (vi) any actual or alleged rendering of or failure to render Professional Services to any securities broker/dealer other than a dealer who buys, sells or trades in securities exclusively as a principal for its own account.

Policy, Section 4.III.Q. FFG reserves the right to deny coverage for the WorldCom Securities Litigation to the extent that the WorldCom Securities Litigation is determined to fall within the scope of this exclusion.

<u>Subrogation</u>

The Policy also provides that:

> In the event of any payments under this policy, the Insurer shall be subrogated to the extent of such payment to all the rights of recovery of the Parent Organization, and the Parent Organization shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the Parent Organization.[2]

Policy, Section 1.7. In the event that any payment is made under the Policy, FFG reserves all subrogation rights. Please advise as to whether any indemnification has been sought from any non-Insured in connection with the WorldCom Securities Litigation.

Defense Arrangements

It is the duty of the Insureds, and not FFG, to defend any Claim. Policy, Section 4.V. In addition, FFG's consent is necessary for any Insured "to settle any Claim, incur any Defense Cost or otherwise assume any contractual obligation or admit any liability with respect to any Claim . . . unless such Claim does not exceed 50% of the Retention." Policy, Section 4.V.

The Policy further provides that FFG has

> the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any Claim that appears reasonably likely to be covered in whole or in part by this Policy.
>
> The Insured shall have the sole obligation under this Policy to retain defense counsel, which shall be subject to the consent of the Insurer. Such consent shall not be unreasonably withheld.

Policy, Section 4.V. FFG understands that Fleet has retained the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden Arps") as defense counsel

---

[2] The Parent Organization is defined as "FleetBoston Financial Corporation." Policy, Item 1.

in connection with the WorldCom Securities Litigation. FFG asks that defense invoices be furnished on a monthly basis so that FFG can monitor the activity in the WorldCom Securities Litigation and the amounts expended to date.

Request for Cooperation and Additional Information

The Insured(s) have a duty to cooperate fully with FFG under the Policy, including providing it with "all information, assistance and cooperation which [it] reasonably requests." Policy, Section 4.V. FFG requests that Fleet keep it fully informed of the status of the WorldCom Securities Litigation on a contemporaneous basis, and provide copies on an on-going basis of all substantive pleadings, filings, orders, memoranda, correspondence and/or transcripts in connection with these matters. FFG further requests the following information:

- A list and description of the WorldCom-related transactions in which Fleet or any other Insured(s) allegedly participated;

- The evidence you have obtained during the course of your investigation to either support or rebut the allegations in the WorldCom Securities Litigation (including, but not limited to, written correspondence, memorandum, e-mail correspondence and due diligence reports);

- A legal analysis of the issues raised by the allegations against Fleet Securities in the WorldCom Securities Litigation based on the facts that your investigation has revealed to date; and

- The key documents bearing on each of the above mentioned issues.

FFG also may have additional requests for information, assistance and cooperation as these matters proceed. FFG expects Fleet to comply with its obligations under the Policy to provide this, and any other, information requested by FFG.

Furthermore, as set forth above, FFG's consent is necessary for any Insured(s) to enter into any settlement. Policy, Section 4 V. Accordingly, FFG requests that Fleet keep it closely apprised of any settlement demands or discussions that have any potential to implicate coverage under the Policy and consult FFG in advance regarding any contemplated settlement offers. FFG also expects Fleet fully to comply with its obligations under the Policy concerning settlements.

In closing, FFG reiterates that the information currently available to it is preliminary and likely incomplete. As additional information becomes available to FFG, other terms, conditions or exclusions may be implicated. Accordingly, this letter, as well as all past, present and future communications, is sent pursuant to a complete reservation of all of FFG's rights under the Policy and at law, and nothing said herein, or left unsaid, is or is intended as a waiver of any such rights or defenses.

Please do not hesitate to contact me should you have any questions.

Sincerely,

Mai Lam

Mai T. Lam
Chubb & Son
Claims Manager for
FFG Insurance Company, Ltd.

cc: Daniel J. Standish, Esq.
David H. Topol, Esq.
Jody H. Schwarz, Esq.
Benno Friedman
Kenneth Chan
Kimberly A. Glowish
Peter Cronan
Jana Litsey, Esq.
R. Damien Brew
Lawrence D. Zwick
David A. Benfield, Esq.
Stacey McGraw, Esq.
Ken Milbauer
Lynn O'Leary
Shelby Ulan
Anne T. Ottaviano, Esq.
Danielle Librizzi, Esq.